# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-01020 (RDM) |
| | ) | |
| U.S. DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Background .................................................................................................................... 2

Procedural History ........................................................................................................ 4

Standard of Review ....................................................................................................... 5

Argument ....................................................................................................................... 7

   I.    Defendant failed to conduct an adequate search based on its improper and
       unjustifiably narrow construction of CoA Institute's FOIA request. ................................. 7

   II.   Exemption 6 does not allow the categorical withholding of the personally
       identifying information of DOD employees in the records at issue. ............................... 11

       A.    The Herrington Declaration is conclusory and does not adequately
             justify Defendant's use of Exemption 6. ................................................................. 12

       B.    Official DOD guidance on the withholding of personally identifying
             information does not prohibit disclosure in this case............................................. 15

       C.    Defendant has not met its burden under the "foreseeable harm" standard. ............ 17

Conclusion ................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Civil Liberties Union v. Department of Justice,*
    655 F.3d 1 (D.C. Cir. 2011) ................................................................................................6

*Assassination Archives & Research Center v. Central Intelligence Agency,*
    334 F.3d 55 (D.C. Cir. 2003) .............................................................................................12

*Burka v. Department of Health & Human Services,*
    87 F.3d 508 (D.C. Cir. 1996) .............................................................................................10

*Citizens for Responsibility & Ethics in Washington v. Department of Justice,*
    658 F. Supp. 2d 217 (D.D.C. 2009) ...................................................................................13

*Clemmons v. U.S. Army Crime Records Center,*
    No. 05-02353, 2007 WL 1020827 (D.D.C. Mar. 30, 2007) ...............................................14

*Conservation Force v. Ashe,*
    979 F. Supp. 2d 90 (D.D.C. 2013) .......................................................................................9

*Corley v. United States,*
    556 U.S. 303 (2009) ...........................................................................................................18

*Defenders of Wildlife v. U.S. Border Patrol,*
    623 F. Supp. 2d 83 (D.D.C. 2009) ...........................................................................5, 13, 15

*Department of the Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ...............................................................................................................17

*Department of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) .......................................................................................................7, 10

*Department of State v. Washington Post Co.,*
    456 U.S. 595 (1982) .......................................................................................................11, 12

*Ecological Rights Foundation v. Federal Emergency Management Agency,*
    No. 16-5254, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017) .............................................19

*Electronic Frontier Foundation v. Department of Justice,*
    826 F. Supp. 2d 157 (D.D.C. 2011) .................................................................................6, 7

*Hemenway v. Hughes,*
    601 F. Supp. 1002 (D.D.C. 1985) ......................................................................................11

*Horowitz v. Peace Corp*,
    428 F.3d 271 (D.C. Cir. 2005) ............................................................12

*Hunton & Williams LLP v. Environmental Protection Agency*,
    248 F. Supp. 3d 220 (D.D.C. 2017) ...................................................13, 15, 17

*Ibrahim v. Department of State*,
    No. 16-01330, 2018 WL 2107780 (D.D.C. May 7, 2018)....................................18

*Iglesias v. Central Intelligence Agency*,
    525 F. Supp. 547 (D.D.C. 1981) .........................................................15

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989)......................................................................5

*Judicial Watch, Inc. v. Consumer Financial Protection Bureau*,
    985 F. Supp. 2d 1 (D.D.C. 2014) .........................................................6

*Judicial Watch, Inc. v. Food & Drug Administration*,
    449 F.3d 141 (D.C. Cir. 2006) .......................................................12, 13

*King v. Department of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ...........................................................7

*LaCedra v. Executive Office for U.S. Attorneys*,
    317 F.3d 345 (D.C. Cir. 2003) ...........................................................7

*Long v. Office of Personnel Management*,
    692 F.3d 185 (2d Cir. 2012)............................................................14

*Mead Data Center, Inc. v. Department of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ...........................................................7

*Middle East Forum v. Department of the Treasury*,
    No. 12-2010, 2018 WL 3243978 (D.D.C. July 3, 2018) .........................................8

*Miller v. Casey*,
    730 F.2d 773 (D.C. Cir. 1984) ..........................................................10

*Mingo Logan Coal Co. v. Environmental Protection Agency*,
    714 F.3d 608 (D.C. Cir. 2013) ..........................................................18

*Morley v. Central Intelligence Agency*,
    508 F.3d 1108 (D.C. Cir. 2007)..........................................................13

*Nation Magazine v. U.S. Customs Service*,
    71 F.3d 885 (D.C. Cir. 1995) .......................................................6, 7, 8

*National Archives & Records Administration v. Favish*,
  541 U.S. 157 (2004).........................................................................................................5

*National Labor Relations Board v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978).........................................................................................................5

*National Security Counselors v. Central Intelligence Agency*,
  849 F. Supp. 2d 6 (D.D.C. 2012)...................................................................................11

*Oglesby v. Department of the Army*,
  920 F.2d 57 (D.C. Cir. 1990)...........................................................................................6

*Pinson v. Department of Justice*,
  177 F. Supp. 3d 56 (D.D.C. 2016).................................................................................14

*Quick v. Department of Commerce*,
  775 F. Supp. 2d 174 (D.D.C. 2011).................................................................................5

*Republican National Committee v. Department of State*,
  235 F. Supp. 3d 235 (D.D.C. 2016).................................................................................9

*Rodriguez v. Department of Defense*,
  236 F. Supp. 3d 26 (D.D.C. 2017)..............................................................................8, 11

*Schwaner v. Department of the Army*,
  696 F. Supp. 2d 77 (D.D.C. 2010).................................................................................17

*Stonehill v. Internal Revenue Service*,
  534 F. Supp. 2d 1 (D.D.C. 2008)...................................................................................14

*Truitt v. Department of State*,
  897 F.2d 540 (D.C. Cir. 1990).....................................................................................6, 8

*United States v. Palmer*,
  854 F.3d 39 (D.C. Cir. 2017).........................................................................................18

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999)....................................................................................6, 11

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973).......................................................................................12

**Statutes**

5 U.S.C. § 552(a)(4)(B) ........................................................................................................6

5 U.S.C. § 552(a)(8)(A)(i)(I) ..............................................................................................17

5 U.S.C. § 552(b)(6) ..........................................................................................................11

**Regulations**

32 C.F.R. § 286.3(b) ................................................................................................................2

**Rules**

Federal Rule of Civil Procedure 56(a) ...................................................................................6

**Other Authorities**

162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) .........................................................18

Dep't of Justice, Attorney General Memorandum for Executive Departments and
    Agencies Concerning the Freedom of Information Act,
    74 Fed. Reg. 51,879 (Oct. 8, 2009)....................................................................18, 19

H.R. Rep. No. 114-391 (2016)..............................................................................19

S. Rep. No. 114-4 (2016).....................................................................................19

## <u>INTRODUCTION</u>

This case concerns a Freedom of Information Act ("FOIA") request for records regarding the use of telecommunications technology at the White House.  Plaintiff Cause of Action Institute ("CoA Institute") seeks access to records reflecting communications with any employee of the Executive Office of the President ("EOP") concerning telephone or video conferences arranged or hosted by the military.  The Department of Defense ("DOD") and Defendant Department of the Army ("Defendant" or "Army") play a special role in performing telecommunications functions for the President and the rest of the EOP.

CoA Institute challenges two aspects of Defendant's processing of the FOIA request at issue.  The first is the adequacy of Defendant's search for responsive records.  Over two-and-an-half years ago, CoA Institute provided Defendant with an email obtained from the Office of Management and Budget ("OMB") that demonstrates where records responsive to CoA Institute's request could be found.  That location is an email account, which the Army admits it owns and maintains and, therefore, controls.  Yet Defendant heretofore has refused to provide any details on the status of its search.  Only now, in its motion for summary judgment, does the Army reveal its exceedingly narrow and unjustified interpretation of the scope of CoA Institute's request.  Relying solely on this unnatural construction, Defendant refuses to search the one location that is known to contain the correspondence sought by CoA Institute.  Defendant thus presents the Court with a textbook example of an inadequate search.

CoA Institute also disputes Defendant's overbroad application of Exemption 6.  Although the Army refused to search its own record locations, it referred CoA Institute's FOIA request, in relevant part, to the White House Communications Agency ("WHCA"), a sub-unit of the White House Military Office ("WHMO").  WHCA ultimately produced approximately 200 pages of email records.  But the government improperly invoked Exemption 6 to withhold personally

identifying details of countless DOD employees.  This overbroad use of Exemption 6 violates the FOIA and attendant caselaw, as well as official DOD policies for the redaction of names, contact information, and similar material.

CoA Institute therefore respectfully requests that the Court deny Defendant's motion for summary judgment and grant CoA Institute's cross-motion for summary judgment.

## BACKGROUND

The WHMO is a functional component of the EOP tasked with overseeing DOD assets and personnel detailed to the White House.  Pl.'s Statement of Undisputed Material Facts ¶ 1 [hereinafter Pl.'s SUMF].  WHCA, which is both a sub-office within the WHMO and a component of DOD's Defense Information Systems Agency, is responsible for providing "information services and communications support to the [P]resident and his staff."  *Id.* ¶ 2.  Although WHCA is a "joint service command" with personnel drawn from multiple military departments, the Army provides most of the staff.  *Id.*  Notwithstanding this unique arrangement, WHMO and WHCA records are subject to the FOIA, *id.* ¶ 3; 32 C.F.R. § 286.3(b), and the Army is legally obliged to process a FOIA request for records of such components.  Pl.'s SUMF ¶ 3.

While investigating another matter unrelated to this lawsuit, CoA Institute obtained a record from OMB that revealed Defendant's role in facilitating teleconferences for the White House (the "OMB email").  *Id.* ¶ 4; Compl. Ex. 1, ECF No. 1-1.  That record, which is an email confirming the creation of a telephone conference line, was created with and originated from an account called "system.manager@conus.army.mil" (the "CONUS account").  Pl.'s SUMF ¶ 4. Defendant admits that it owns the CONUS account and its contents, which are saved on Army computer servers.  *Id.* ¶ 5.

Wanting to investigate the nature of the OMB email and the Army's connection with the WHMO and WHCA, CoA Institute submitted a FOIA request to Defendant by letter, dated June

2

26, 2015, seeking "all records of communications with any employee of [EOP] . . . concerning telephone and/or video conferences hosted and/or arranged by the military." *Id.* ¶¶ 6–7.  CoA Institute clarified in its request that "[r]esponsive records would include any e-mail requesting that a conference line be opened, as well as any subsequent confirmation e-mail or related correspondence." *Id.* ¶ 9.[1]  CoA Institute also explained that the Army would be obliged to "forward and/or refer" the June 26, 2015 FOIA request to other DOD components, if they were believed to possess responsive records. *Id.* ¶ 10.  Finally, CoA Institute requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.* ¶ 11.

Defendant received CoA Institute's FOIA request on August 19, 2015.  *Id.* ¶ 12. Approximately one month later, on September 22, 2015, Defendant issued its final determination, alleging that it had made a "good faith effort to conduct a search" but failed to locate any responsive records.  *Id.* ¶ 13.  By letter, dated September 25, 2015, CoA Institute filed a timely administrative appeal.  *Id.* ¶ 14.  CoA Institute challenged Defendant's "failure to conduct an adequate search for potentially responsive records," as well as Defendant's "reliance," if any, on "the FOIA 'exclusions' and its possible determination that the requested records are not 'agency records' for the purposes of the FOIA."  *Id.*

In its appeal, CoA Institute provided Defendant with a copy of the OMB email that originated from the CONUS account. *Id.* ¶ 15; Compl. Ex. 5, ECF No. 1-5.  CoA Institute pointed to the email as proof that responsive records under the Army's legal control existed, particularly given the reasonable inference that EOP staff frequently participate in teleconferences.  Pl.'s SUMF ¶ 15; Compl. Ex. 5 at 3–4 ("In one e-mail . . . [an OMB employee] received a confirmation notice from an Army-maintained e-mail account for an upcoming 'audio conference' set-up for

---

[1] The time period for the FOIA request is "January 1, 2015 to the present."  Pl.'s SUMF ¶ 8.

3

the purpose of conducting a FOIA consultation with attorneys at [the Office of White House Counsel] and others.  This record, and similar others, would be directly responsive to Cause of Action's FOIA request" (footnote omitted)).  Defendant acknowledged receipt of CoA Institute's appeal on November 6, 2015.  Pl.'s SUMF ¶ 16.

**<u>PROCEDURAL HISTORY</u>**

CoA Institute filed its Complaint on May 31, 2016.  *Id.* ¶ 17.  At the time, Defendant had not issued a determination on CoA Institute's appeal and it had not provided any other substantive updates.  *See id.* ¶ 18.  The Army filed its Answer on September 9, 2016.  ECF No. 13.

Following the commencement of legal proceedings, Defendant started to process CoA Institute's FOIA request.  The Army, for its part, attempted to find the CONUS account.  *See* Pl.'s SUMF ¶ 19.  After consulting with the Army Material Command Chief Information Officer, Defendant successfully located the account and determined that the OMB email, as well as other email records "generated" by the same "software program," would have been "housed on an Army server[.]"  *Id.* ¶ 20.  Defendant nevertheless decided against "any electronic search for" the contents of the CONUS account because Defendant did not believe any correspondence contained therein would be responsive to CoA Institute's FOIA request.  *Id.* ¶ 21.  Defendant's categorical determination hinged on an alleged technicality: "[O]nly EOP employees were involved in the creation of the email itself and in hosting or arranging . . . conference call[s]."  Decl. of Paul DeAgostino Decl. ¶ 11, ECF No. 25-3.  In other words, the "military," or "Army and DoD personnel," would have "had no role in hosting or arranging . . . conference call[s]" for the White House.  *Id.* ¶ 12; *id.* ¶ 13 ("I determined that the cited email and any similar emails are therefore non-responsive, and the Army was not obligated to conduct any electronic search for, or review such non-responsive emails.").  CoA Institute challenges the adequacy of the Army's search and its construction of the scope of CoA Institute's FOIA request.

4

WHCA also was tasked with searching for responsive records and started its search efforts at the end of July 2016.  Pl.'s SUMF ¶ 27.  The agency processed a voluminous number of records, but only produced about 200 responsive pages over the course of eleven regular productions and one supplemental production.  *See* Def.'s Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. at 3 [hereinafter Def.'s Mot.], ECF No. 25-1.  With respect to the records produced, Defendant invoked several exemptions to withhold responsive portions.  *See* Def.'s Statement of Undisputed Material Facts ¶ 37 [hereinafter Def.'s SUMF], ECF No. 25-2.  CoA Institute challenges the use of Exemption 6 to withhold the personally identifying information of DOD employees.

## STANDARD OF REVIEW

"Congress enacted [the] FOIA to introduce transparency into government activities." *Quick v. Dep't of Commerce*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011) (citing *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984)).  The statute serves as a "means for citizens to know 'what the Government is up to'" and it "defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation omitted); *see also Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").  The rights afforded under the FOIA are a bulwark to the "fundamental principle of public access" to records of the administrative state, which can often be "'shielded unnecessarily from public view . . . [by] possibly unwilling official hands.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973)).

FOIA cases are typically decided by summary judgment motions.  *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Yet summary judgment should only be granted if a "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, "all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate." *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 985 F. Supp. 2d 1, 1 (D.D.C. 2014) (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)), *vacated on other grounds*, 60 F. Supp. 3d 1 (D.C. Cir. 2014).

In this case, where the adequacy of an agency's search is at issue, Defendant bears the burden of demonstrating "beyond material doubt" that it undertook a search "'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). An agency "must show that it made a good faith effort to a conduct a search . . . using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). It is required to "make more than perfunctory searches and . . . 'cannot limit its search' to only one or more places if there are additional sources 'that are likely to turn up the information requested.'" *Valencia-Lucena*, 180 F.3d at 326 (citations omitted). "If . . . the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

With respect to the use of statutory exemptions, an agency determination is reviewed *de novo*. 5 U.S.C. § 552(a)(4)(B). "Consistent with congressional intent tilting the scales in favor of full disclosure," *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 164 (D.D.C. 2011), the agency bears the substantial burden of demonstrating whether the withheld records, or portions thereof, are properly exempt. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 5

6

(D.C. Cir. 2011); *see also Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). FOIA

exemptions must be "narrowly construed" and "conclusory and generalized allegations . . . are

unacceptable." *Elec. Frontier Found.*, 826 F. Supp. 2d at 164; *see Mead Data Ctr., Inc. v. Dep't

of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) ("[A]n agency [that] seeks to withhold

information . . . must provide a relatively detailed justification, specifically identifying the reasons

why a particular exemption is relevant and correlating those claims with the particular part of a

withheld document to which they apply." (citations omitted)); *see also King v. Dep't of Justice*,

830 F.2d 210, 219 (D.C. Cir. 1987) ("To accept an inadequately supported exemption claim 'would

constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo*

review.'" (citation and footnote omitted)).

## ARGUMENT

**I.  Defendant failed to conduct an adequate search based on its improper and unjustifiably narrow construction of CoA Institute's FOIA request.**

The Army failed to conduct an adequate search for responsive records because it adopted

an exceedingly narrow interpretation of the scope of CoA Institute's FOIA request that is neither

supported by the record, nor CoA Institute's proffered explanations, nor common sense.[2]

Defendant's contrived argument to exclude the contents of the CONUS account on the basis that

"only EOP employees were involved in the creation of . . . email," or in "hosting or arranging . . .

conference call[s]," DeAgostino Decl. ¶ 11, is "simply implausible." *LaCedra v. Exec. Office for

U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003). Controlling case law obliges the Army "to

construe [CoA Institute's] FOIA request liberally" and design its search accordingly. *Nation

Magazine*, 71 F.3d at 890. Defendant has not met its obligation in this respect; thus, it also cannot

---

[2] CoA Institute does not challenge the adequacy of WHCA's search for responsive records. No
response is offered with respect to that potion of Defendant's motion. *See* Def.'s Mot. at 10–13.

meet its burden to demonstrate that it made "'a good faith effort to conduct a search.'" *Id.* (citation omitted).

CoA Institute's FOIA request seeks "all records of communications with any employee of [EOP] . . . concerning telephone and/or video conferences hosted and/or arranged by the military." Pl.'s SUMF ¶ 7; Compl. Ex. 2, ECF No. 1-2.  This includes any correspondence "requesting that a conference line be opened . . . [or] any subsequent confirmation e-mail or related correspondence."  Pl.'s SUMF ¶ 9.  If there had been any confusion that led the Army to conduct an inadequate search prior to its initial determination, *see id.* ¶ 14, this ambiguity should have been resolved with the submission of CoA Institute's FOIA appeal.  In that appeal, CoA Institute gave Defendant a copy of the OMB email that originated from the CONUS account.  *Id.* ¶ 15.  CoA Institute also specified that the OMB email reflected the sort of records "directly responsive to [its] FOIA request."  *Id.*; Compl. Ex. 5 at 3–4; *see also Middle E. Forum v. Dep't of the Treasury*, No. 12-2010, 2018 WL 3243978, at *3–4 (D.D.C. July 3, 2018) (rejecting Internal Revenue Service's interpretation of a request when requester provided clarification during administrative appeal); *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 37 (D.D.C. 2017) (requester's communications during agency's processing speak to the scope of a FOIA request).

By its own admission, the Army received CoA Institute's clarification—*a literal description of the subject-matter of its FOIA request*—long before it even began to process the request, let alone attempt to locate the CONUS account.  Pl.'s SUMF ¶ 19.  An agency may not narrow the scope of a request when it "'know[s] all along precisely what records [are] being requested.'"  *Truitt*, 897 F.2d at 545 (citing S. Rep. No. 93-854, 93d Cong., 2d Sess. 10 (1974)).  Defendant understood the scope of CoA Institute's request, yet it refused to accept it and never

made its position known prior to or during the long months of this litigation. Instead, Defendant waited until its summary judgment motion to reveal its interpretation of the FOIA request.

When the Army located the CONUS account, it determined it had no obligation to proceed because "only EOP employees were involved in the creation" of any potentially responsive emails records. DeAgostino Decl. ¶ 11. On Defendant's view, because its own "personnel . . . had no role in hosting or arranging the conference call referenced [in the OMB email] and would not have hosted or arranged conferences in any similar emails," *id.* ¶ 12, then *no* records in the CONUS account could ever be responsive. *Id.* ¶ 13. But that position is flawed for at least three reasons.

*First*, Defendant's narrow interpretation of the phrase "hosted and/or arranged by the military" contradicts the intended subject-matter scope of CoA Institute's FOIA request, as reiterated and clarified in CoA Institute's appeal and the Complaint. *See Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 100–03 (D.D.C. 2013) (rejecting agency's use of a parenthetical phrase to narrowly construe a FOIA request). In this case, a natural reading of the words "hosted" and "arranged" includes the situation of an agency maintaining a software system and email account for the sole purpose of setting-up audio and video conferences. *See Republican Nat'l Comm. v. Dep't of State*, 235 F. Supp. 3d 235, 240–41 (D.D.C. 2016) (rejecting agency understanding of "visitor logs" based on the context of a FOIA request). The phrase "hosted and/or arranged by the military" refers to Defendant's role as a "communications facilitator" for the White House. *See* Compl. Ex. 5 at 3.

*Second*, Defendant's consideration of the supposed participation of DOD "personnel" in the creation of records housed in the CONUS account is fatal to its argument. *See* DeAgostino Decl. ¶ 12 ("I was informed that Army and DoD personnel . . . had no role in hosting or arranging the conference call referenced in Plaintiff's cited email[.]"). CoA Institute never referred to "Army

and DoD personnel" when describing the scope of its request.  *See* Compl. Ex. 2.  The Army's decision that records in the CONUS account can only be non-responsive because "EOP employees" used Army software on an Army email account is unreasonable.  An "agency [is] bound to read" a FOIA request "as drafted, not . . . as agency officials . . . might wish it was drafted."  *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).  CoA Institute did not condition the responsiveness of records on the involvement of DOD *personnel* in facilitating audio and video conferences; CoA Institute instead referred to DOD's *institutional* role, which would include maintaining the CONUS account and making relevant conference-scheduling software available for White House use.  Moreover, Mr. DeAgostino's claims about "EOP employees" is contradicted by the testimony of Defendant's second declarant, Mark Herrington, who stated that EOP employees only use an "eop.gov" email address.  Pl.'s SUMF ¶ 35.  Defendant does not explain why EOP employees, who use non-DOD email accounts, would have been authorized to access or operate the CONUS account or otherwise use Army computer software programs.

*Third*, assuming Defendant's interpretation of CoA Institute's FOIA request were correct, it would improperly sweep the entire contents of the CONUS account out of the reach of public disclosure.  Because the Army owns the CONUS account, as well as the software program that is used to create records like the OMB email, *see* Compl. Ex. 1, ECF No. 1-1, it is likely the *only* agency that can process CoA Institute's request.  An EOP component, if even subject to the FOIA, would lack the authority to search Army computer servers or Army email accounts and, thus, would have no legal control over the records sought by CoA Institute.  *See generally Tax Analysts*, 492 U.S. at 144–45; *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (discussing agency "control").

The parties here agree that the CONUS account exists, contains the OMB email and similar records, and is maintained on an Army computer server.  *See* Pl.'s SUMF ¶ 20.  Defendant's unfair reading of CoA Institute's FOIA request is the sole basis for its refusal to conduct an adequate search—or any search at all.  But that reading cannot be sustained.  *See Rodriguez*, 236 F. Supp. at 36 (An agency "must 'select the interpretation that would likely yield the greatest number of responsive documents[.]'" (citation omitted)); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012) ("[A]n agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information."); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) ("[T]he agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists[.]").

The existence of the CONUS account is a "'positive indication[] of overlooked materials.'" *Valencia-Lucena*, 180 F.3d at 326, 392 (citing *Founding Church of Scientology, Inc.*, 610 F.2d 824, 837 (D.C. Cir. 1979)).  The Court should therefore deny Defendant's motion for summary judgment and order the Army to search for and process records located in the CONUS account.

## II.   Exemption 6 does not allow the categorical withholding of the personally identifying information of DOD employees in the records at issue.

In addition to refusing to conduct an adequate search, Defendant improperly invoked Exemption 6 to keep secret personally identifying information of an unknown number of DOD employees.  Exemption 6 protects "[(1)] personnel and medical files and similar files [(2)] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Agency records, or portions thereof, may only be withheld when both elements of this exemption are satisfied.  *See Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982).  *First*, "information must be contained in personnel, medical or 'similar' files." *Id.*  The term "similar files" has been broadly construed to include most records that contain information

11

about an individual, so long as "the release of [that information] would 'create . . . a palpable threat to privacy.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citation omitted). *Second*, "the information must be of such a nature that its disclosure would constitute a *clearly unwarranted invasion* of personal privacy." *Wash. Post Co.*, 456 at 598 (emphasis added). Individual privacy interests are balanced "against the public interest (namely, 'the basic purpose of the [FOIA],' which is 'to open agency action to the light of public scrutiny')." *Horowitz v. Peace Corp*, 428 F.3d 271, 278 (D.C. Cir. 2005) (citation omitted).

In this case, Defendant asserts that it can sustain blanket redactions of all low-level DOD employees. The only justifications offered in support of that position, however, are an appeal to unspecified agency "practice," *see* Decl. of Mark H. Herrington ¶ 23, ECF No. 25-4, a generalized claim about the "sensitive" nature of WHCA and WHMO positions, *id.* ¶ 25, and an argument that disclosure would not serve the "core purpose" of the FOIA. *Id.* ¶ 26. Defendant's arguments are unavailing. The Herrington Declaration is conclusory and lacks the specificity required of a *Vaughn* index. Publicly disclosed DOD policy for the application of Exemption 6 also permits disclosure in this instance. And, finally, Defendant has failed to meet its burden under the FOIA's "foreseeable harm" standard.

### A.     The Herrington Declaration is conclusory and does not adequately justify Defendant's use of Exemption 6.

The Herrington Declaration fails to meet Defendant's burden to demonstrate the proper withholding of personally identifying information. *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Whether it asserts Exemption 6 to protect details of its own employees or those of other agencies, Defendant "bears the burden of establishing the applicability of the claimed exemption." *Assassination Archives & Res. Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003). This entails giving "'a relatively detailed justification, specifically identify[ing]

the reasons why a particular exemption is relevant and correlate[ing] those claims with the particular part of a withheld document to which they apply.'" *Judicial Watch, Inc.*, 449 F.3d at 146 (citation omitted); *see also Defs. of Wildlife*, 623 F. Supp. 2d at 89.  "[C]onclusory and generalized allegations of exemptions' are unacceptable." *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1115 (D.C. Cir. 2007).

One example of the Herrington Declaration's deficiency is its failure to provide an index of the withheld information.  The lone footnote supplied by Mr. Herrington is insufficient.  *See* Herrington Decl. at 7 n.1.  After reciting DOD's supposed practice of withholding personal details of "all military personnel at the rank of Colonel (O6) and below, and all civilians at the rate of GS-15 and below," *id.* ¶ 23, Mr. Herrington proceeded only to describe how the individuals at issue here "do not routinely deal with the press and . . . [are] not senior-level employees."  *Id.* ¶ 24.  CoA Institute (and the Court) has no way of determining whether Defendant followed its claimed policy.  Given the "'asymmetrical distribution of knowledge'" between an agency and a requester, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 658 F. Supp. 2d 217, 223 n.3 (D.D.C. 2009) (citation omitted), Defendant was required to do more to establish exactly how many DOD employees are implicated in the records at issue and, moreover, provide information concerning their ranks (for military personnel) or General Schedule pay grades (for civilian employees), job descriptions, and whether they are still working in the WHMO or WHCA.  *See Hunton & Williams LLP v. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 258 (D.D.C. 2017) (criticizing Army for "frequently describ[ing]" individuals listed in *Vaughn* index as vaguely "non-Senior Executive personnel"); *see also Judicial Watch, Inc.*, 449 F.3d at 146.  This would not have been a particularly burdensome task here given the small number of records at issue.

The Herrington Declaration also states that "[m]any"—but, presumably, not all—"of the[] individuals" at issue "serve in sensitive DoD positions."  Herrington Decl. ¶ 25.  Setting aside Defendant's failure to address the potential set of employees whose names and email addresses have been withheld but who do not serve in "sensitive positions," the authorities upon which Defendant relies are inapt.  There is no caselaw to support the notion that WHMO and WHCA employees are entitled to heightened privacy given their role in providing telecommunications services to the EOP.  Private personal information is typically withheld only "if [its] release will endanger a staff member's safety."  *Pinson v. Dep't of Justice*, 177 F. Supp. 3d 56, 83 (D.D.C. 2016).  In cases involving DOD military personnel or civilian employees in "sensitive" positions, courts consistently look to whether there is a *real* threat of such harm.  *See, e.g.*, *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012) (discussing "employees in the sensitive agencies and occupations" of "national security, homeland security, or law enforcement").

In *Clemmons v. U.S. Army Crime Records Center*, for example, the court upheld the redaction of the names of criminal investigation special agents, military police, and third-party witnesses when a requester sought records connected with "his own suspected criminal activity." No. 05-02353, 2007 WL 1020827, at *6 (D.D.C. Mar. 30, 2007) (considering possibility of "harassment or reprisal").  But DOD's military and civilian IT staff at the White House are *not* analogous to criminal investigators or military police, nor can they be compared with active duty personnel assigned to combat zones or specialized training facilities.  Defendant has not provided any specific reasons why WHMO and WHCA personnel would be prone to harassment or physical harm if their personally identifying information were disclosed.  *See* Herrington Decl. ¶ 25. Defendant's blanket claim is inadequate, *see Stonehill v. Internal Revenue Serv.*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) ("[T]he government offers no explanation as to *why* disclosure of this

14

particular agent's name would cause embarrassment, undue harassment, etc."), and Defendant's "'[b]road categorical descriptions'" deprive the Court of the ability to "'engage in a meaningful review.'" *Defs. of Wildlife*, 623 F. Supp. 2d at 89 (citation omitted).

Finally, Defendant claims that CoA Institute "has not, and cannot, identify a public interest sufficient to outweigh the significant interest of DoD personnel to maintain their safety and privacy." Def.'s Mot. at 16; Herrington Decl. ¶ 26 ("[R]elease of these individuals' names and personally identifying information would not serve the 'core purpose' of the FOIA[.]"). This is hardly the case. As explained in its FOIA request, CoA Institute seeks to understand "the manner in which agencies, the White House, and the military (as communications facilitator) conduct audio or visual conferences." Compl. Ex. 2 at 3; *see also* Pl.'s SUMF ¶ 6. Information about *how* and *when* these conferences are set-up, and *who* is involved in facilitating them, is an integral part of CoA Institute's investigation and provides the sort of information that could be used for future targeted FOIA requests. *See Hunton & Williams LLP*, 248 F. Supp. 3d at 258–59 ("Here, [the requester] *does* articulate that the public's interest in understanding the decisionmaking process by understanding the role played by different individuals at the Army. This is a public interest that will, in part, reveal how the agency is functioning."); *cf. Iglesias v. Cent. Intelligence Agency*, 525 F. Supp. 547, 563 (D.D.C. 1981) ("[T]here is a . . . strong[] public interest in disclosing the names of the employees and agents who worked on a [government matter.]"). Such information could also be pieced together with other facts gleaned from the substance of the responsive records. It is therefore false that there is "no public interest at stake." Def.'s Mot. at 16.

## B.   Official DOD guidance on the withholding of personally identifying information does not prohibit disclosure in this case.

Defendant argues that "DoD has instituted a policy to withhold personal 'information regarding the vast majority of DoD personnel.'" Def.'s Mot. at 15. In support of this claim,

Defendant relies on the Herrington Declaration.  *See, e.g.*, Herrington Decl. ¶ 23.  But Mr. Herrington neither identified any specific DOD policy, as opposed to "practice," nor did he provide the Court with the official agency guidelines for the application of Exemption 6.  This information, however, is publicly available and has been published by DOD in an electronic reading room of its FOIA office.  *See* Pl.'s SUMF ¶¶ 22–26; Decl. of Ryan P. Mulvey ¶¶ 4–5.  The current policy for withholding personally identifying information would not prohibit disclosure in this case.

Because of the "increased risks to US military and civil personnel" following the terrorist attacks of September 11, 2001, DOD established new guidelines for the release of personally identifying information in a memorandum, dated November 9, 2001.  Pl.'s SUMF ¶ 22.  The DOD memorandum establishes three categories of personally identifying information that can be withheld under Exemption 6.  *First*, "DoD components" should "ordinarily withhold lists of names and other personally identifying information of personnel currently or recently assigned within a particular component, unit, organization, or office with [DOD]," unless the particular request at issue "does not raise security or privacy concerns."  *Id.* ¶ 23(a).  *Second*, with respect to requests for the "[v]erification of status of named individuals," DOD components are directed to consider whether release of the requested information would "raise security or privacy concerns" or whether such information "has been routinely released to the public."  *Id.* ¶ 23(b).  *Third*, and relevant here, official DOD policy directs that "[n]ames in documents that don't fall in any of the preceding categories" should "[o]rdinarily . . . not be withheld," except "where the release of a particular name would raise substantial security or privacy concerns[.]"  *Id.* ¶ 23 (c).

The November 9, 2001 DOD memorandum contradicts the Herrington Declaration, and there is no other guidance on Exemption 6 available in the DOD electronic reading room or the record before the Court.  *See id.* ¶ 26.  By its own terms, the DOD policy instructs agency

components *not* to withhold the names of military or civilian employees (regardless of rank or pay grade), *unless* they are either found in a "list" or if disclosure would raise *substantial* security or privacy concerns.[3]  As recently as last year, a court recognized that the November 9, 2001 DOD memorandum appeared to establish a default rule of disclosing agency employees' names.  *See Hunton & Williams LLP*, 248 F. Supp. 3d at 257 n.45 ("[O]n its face," the November 9, 2001 DOD memorandum "appears to cover aggregated lists of employees, rather than employees' names incidentally included in other documents.").  Defendant thus cannot rely on categorical claims in a conclusory declaration to establish the existence of "substantial security or privacy concerns" for yet-to-be-specified individuals whose names and email addresses are found in the records at issue.

### C.      Defendant has not met its burden under the "foreseeable harm" standard.

The FOIA mandates that an agency release records unless they fall under a specifically enumerated exemption.  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant object of the Act[.]"  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001) (internal citations omitted).  With the passage of the FOIA Improvement Act of 2016, Congress introduced significant amendments, including changes that raise the standard by which an agency must evaluate its withholdings.  As the law stands now, an agency may "withhold information" under the FOIA "only if [it] *reasonably foresees* that disclosure would harm an interest protected by an exemption[.]"  5 U.S.C. § 552(a)(8)(A)(i)(I) (emphasis added).

Under this "foreseeable harm" standard, it is not enough that Defendant make a case for the technical application of Exemption 6; it must articulate *precise* reasons why *specific* pieces of

---

[3] Defendant's reliance on *Schwaner v. Department of the Army* is accordingly inapposite.  *See* Def.'s Mot. at 15.  That case involved a FOIA request for lists of Army students at Fort Eustis in Newport News, VA.  696 F. Supp. 2d 77, 78 (D.D.C. 2010).

personally identifying information could be *reasonably foreseen* to give rise to a clearly unwarranted invasion of personal privacy, such that harassment or physical harm would ensue. *See* 162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) (statement of Sen. Leahy) ("Importantly, codifying the presumption of openness will help reduce the perfunctory withholding of documents through the overuse of FOIA exemptions.  It requires agencies to consider whether the release of particular documents will cause any foreseeable harm to an interest the applicable exemption is meant to protect.").

By creating the "foreseeable harm" standard, Congress sought to limit the technical application of exemptions and raise the standard by which an agency evaluates its withholdings. Congress did not seek merely to codify existing policies or practices.  To construe the FOIA in such a way would offend the traditional canon against surplusage, which directs "courts 'to give effect, if possible, to every clause and word of a statute[.]'"  *Ibrahim v. Dep't of State*, No. 16-01330, 2018 WL 2107780, at *3 (D.D.C. May 7, 2018) (citation omitted); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretive canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" (internal quotation marks, brackets, and citation omitted)); *United States v. Palmer*, 854 F.3d 39, 48 (D.C. Cir. 2017) ("[C]ourts are to interpret congressional statutes in a way to avoid surplusage." (citations omitted)).  The unambiguous language of the "foreseeable harm" standard manifests Congress's intent to require something more of an agency when it defends its withholdings.  *See Mingo Logan Coal Co. v. Envtl. Prot. Agency*, 714 F.3d 608, 612–14 (D.C. Cir. 2013).

Before enactment of the FOIA Improvement Act, agencies were afforded some discretion in implementing the Obama Administration's so-called "presumption of openness."  *See* Dep't of

Justice, Attorney General Memorandum for Executive Departments and Agencies Concerning the Freedom of Information Act, 74 Fed. Reg. 51,879 (Oct. 8, 2009) ("An agency should not withhold records merely because it can demonstrate, as a technical matter, that the records fall within the scope of a FOIA exemption.").   But Congress explicitly sought to "[b]uild[] on the Administration's efforts," turning the "presumption" into a "permanent requirement" that would "prohibit agencies from" technical application of exemptions.  *See* H.R. Rep. No. 114-391 at 9 (2016), *available at* http://bit.ly/2HI8EwP; *see also id.* at 9 ("An inquiry into whether an agency has reasonably foreseen a specific, identifiable harm . . . require[s] the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld."); S. Rep. No. 114-4 at 8 (2016), *available at* http://bit.ly/2JIbV4z ("Agencies should note that mere 'speculative or abstract fears,' or fear of embarrassment, are an insufficient basis for withholding information.").

At least one court has recognized the impact of the new standard and the heavy burden it places on an agency.  In *Ecological Rights Foundation v. Federal Emergency Management Agency*, a district court ruled that an agency could not rely on Exemption 5, in conjunction with the deliberative process privilege, because it failed to "provide basic information about the deliberative process at issue and the role played by each *specific* document[.]"  No. 16-5254, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) (emphasis added), *appeal voluntarily dismissed*, No. 17-17539 (9th Cir. Jan. 12, 2018).

Here, Defendant has failed to explain why disclosure of the specific names and email addresses of WHMO and WHCA employees could be reasonably foreseen to lead to harassment or physical harm.  Defendant relies solely on broad generalizations and references to unspecified DOD "practice."  *See* Herrington Decl. ¶¶ 23–26.  It is not even known whether the individuals at

issue are still detailed to the White House or employed by DOD.  Defendant's alternate treatment of DOD contractors, who are not considered "employees" but serve in a functionally equivalent role, as well non-DOD government employees also belies its claim of any real threat of harassment for being identified as an IT provider for the White House.  *See id.* ¶ 27; Pl.'s SUMF ¶ 30.  The Court accordingly should reject Defendant's application of Exemption 6.

<u>**CONCLUSION**</u>

For the foregoing reasons, CoA Institute respectfully requests that the Court deny Defendant's motion for summary judgment and grant CoA Institute's cross-motion for summary judgment.  Specifically, CoA Institute requests that the Court order Defendant to search for and process responsive records in the CONUS account and remove all Exemption 6 redactions from the WHCA correspondence already produced.

Dated: July 9, 2018                          Respectfully submitted,

                                                          */s/* Ryan P. Mulvey
                                                          Ryan P. Mulvey
                                                          D.C. Bar No. 1024362
                                                          Lee A. Steven
                                                          D.C. Bar No. 468543

                                                          CAUSE OF ACTION INSTITUTE
                                                          1875 Eye Street, N.W., Suite 800
                                                          Washington, D.C. 20006
                                                          Telephone: (202) 499-4232
                                                          Facsimile: (202) 330-5842
                                                          ryan.mulvey@causeofaction.org
                                                          lee.steven@causeofaction.org

                                                          *Counsel for Plaintiff CoA Institute*