## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
CAUSE OF ACTION INSTITUTE,        )
                    )
     Plaintiff,        )
                    )
   v.        )        Civil Action No. 16-01020 (RDM)
                    )
U.S. DEPARTMENT OF THE ARMY,        )
                    )
     Defendant.        )
_____)

### PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff Cause of Action Institute ("CoA Institute") hereby submits the following statement of undisputed material facts in support of its cross-motion for summary judgment.

### General Background

1.    The White House Military Office ("WHMO") is a functional component of the Executive Office of the President ("EOP") tasked with overseeing Department of Defense ("DOD") assets and personnel detailed to the White House.  Compl. ¶ 1, ECF No. 1.[1]

2.    The White House Communications Agency ("WHCA") is the WHMO sub-office responsibly for "providing . . . information services and communications support to the president and his staff."  Compl. ¶ 2; Decl. of Mark. H. Herrington ¶ 6, ECF No. 25-4 (WHCA is also a "subordinate unit of the Defense Information Systems Agency").  WHCA is a joint service command, but most of its staff is detailed from Defendant Department of the Army.  Compl. ¶ 2.

---

[1] The description of the WHMO, which Plaintiff accessed during the Obama Administration and cited in its Complaint, has since been relocated to a government-operated archived website.  *The White House Military Office*, White House, http://bit.ly/2lWQmzG (last visited July 9, 2018).

3.      The WHMO and WHCA both serve a functional role within EOP, *see supra* ¶ 1, but their records are nevertheless subject to the FOIA.  Compl. ¶ 3; *see also* 32 C.F.R. § 286.3(b). Defendant is legally obliged to process FOIA requests for records belonging to the WHMO and WHCA.  *See* Compl. ¶ 3; Answer ¶ 3, ECF No. 13.

4.      While investigating another matter unrelated to the present lawsuit, CoA Institute obtained a record from the Office of Management and Budget ("OMB") revealing Defendant's role in facilitating teleconferences for the White House.  Compl. Ex. 1, ECF No. 1-1.  That record, which is an email confirming the creation of a telephone conference line, was created with and originated from an email account called "system.manager@conus.army.mil."  Compl. ¶ 5.

5.      The "system.manager@conus.army.mil" email account belongs to Defendant and its contents are maintained on Defendant's computer servers.  *See* Decl. of Paul DeAgostino ¶ 11, ECF No. 25-3 (According to "[t]he [Army Material Command] . . . the [OMB] email was housed on an Army server, resulting in the use of an 'army.mil' extension[.]").

### CoA Institute's June 26, 2015 Freedom of Information Act Request

6.      To further understand the use of conference call technology at the White House, CoA Institute submitted a Freedom of Information Act ("FOIA") request to Defendant by letter, dated June 26, 2015.  Compl. ¶ 14; Compl. Ex. 2, ECF No. 1-2; Answer ¶ 14.

7.      CoA Institute's FOIA request sought access to "all records of communications with any employee of [EOP] (*e.g.*, "@omb.eop.gov," "ostp.eop.gov," *etc.*), including but not limited to the Office of the White House Counsel ("@who.eop.gov"), concerning telephone and/or video conferences hosted and/or arranged by the military."   Compl. ¶ 14; Compl. Ex. 2; Answer ¶ 14; DeAgostino Decl. ¶ 5.

8.      CoA Institute identified the time period for its request as "January 1, 2015 to the present."  Compl. ¶ 15; Compl. Ex. 2; Answer ¶ 15; DeAgostino Decl. ¶ 5.

9.      In its request, CoA Institute clarified that "[r]esponsive records would include any e-mail requesting that a conference line be opened, as well as any subsequent confirmation e-mail or related correspondence."  Compl. ¶ 16; Compl. Ex. 2; Answer ¶ 16.

10.     CoA Institute explained that "the requested records may be maintained by the [WHMO] and/or [WHCA]."  Compl. ¶ 17; Compl. Ex. 2; Answer ¶ 17.  To the extent multiple DOD components, including other branches of the military, might possess responsive records, CoA Institute further indicated that Defendant "should forward and/or refer [the June 26, 2015] request, in relevant part, to those other components."  Compl. ¶ 18; Compl. Ex. 2.

11.     CoA Institute requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  Compl. ¶ 19; Answer ¶ 19.

12.     By letter, dated August 19, 2015, Defendant acknowledged receipt of the June 26, 2015 request and assigned it an office control number, FA-15-023, and a departmental control number, FP-15-026921.  Compl. ¶ 20; Compl. Ex. 3, ECF No. 1-3; Answer ¶ 20; DeAgostino Decl. ¶ 6.  Defendant did not issue fee any determinations.  Compl. ¶ 20; Answer ¶ 20.

13.     By letter, dated September 22, 2015, Defendant issued its final determination, alleging that it had made a "good faith effort to conduct a search" but otherwise failing to locate responsive records.  Compl. ¶ 21; Compl. Ex. 4, ECF No. 1-4; *see also* Compl. ¶ 9.

14.     By letter, dated September 25, 2015, CoA Institute filed a timely administrative appeal of Defendant's adverse determination.  Compl. ¶ 23; Compl. Ex. 5, ECF No. 1-5; Answer ¶ 23.  Specifically, CoA Institute appealed Defendant's "failure to conduct an adequate search for potentially responsive records" and preemptively challenged Defendant's "reliance on any of the

3

FOIA 'exclusions' and its possible determination that the requested records are not 'agency records' for the purposes of FOIA."  Compl. ¶ 25; Compl. Ex. 5; Answer ¶ 25.

15.     In its appeal, CoA Institute also asked for a remand of its FOIA request so that a supplemental search reasonably calculated to locate all responsive records could be undertaken.  Compl. ¶ 26.  CoA Institute pointed to the OMB email as proof that responsive records under Defendant's control existed, particularly given the reasonable inference that EOP staff participate in audio conferences on a frequent basis.  *Id.*; *see also* Compl. Ex. 5 at 3–4 ("In one e-mail . . . [an OMB employee] received a confirmation notice from an Army-maintained e-mail account for an upcoming 'audio conference' set-up for the purpose of conducting a FOIA consultation with attorneys at [the Office of the White House Counsel] and others.  This record, and similar others, would be directly responsive to Cause of Action's FOIA request." (footnote omitted)).

16.     Defendant acknowledged receipt of CoA Institute's appeal on November 6, 2015.  Compl. ¶ 24; Compl. Ex. 6, ECF No. 1-6; Answer ¶ 24.

17.     On May 31, 2016, CoA Institute filed the present lawsuit.  *See* Compl.

18.     At the time of filing, Defendant had not issued a final determination on CoA Institute's September 25, 2015 administrative appeal.  Compl. ¶ 27; Answer ¶ 27; DeAgostino Decl. ¶ 7; *see also* Compl. Ex. 7, ECF No. 1-7.

### Defendant's Search for the CONUS Email Records

19.     Defendant only attempted to search for responsive records in the "system.manager@conus.army.mil" account following the filling of the Complaint.  *See* DeAgostino Decl. ¶ 8 ("As a result [of CoA Institute citing the OMB email in its "appeal and lawsuit"], I personally attempted to further determine whether the Army maintained responsive records . . . with the email address '@conus.army.mil' or '@army.mil.").

20.     After consulting with the Army Material Command Chief Information Officer, *see id.* ¶ 10, Defendant determined that the OMB email, and others "generated" by the same "software program," "was housed on an Army server[.]"  *Id.* ¶ 11; *see also supra* ¶ 5.

21.     Defendant determined, as a categorical matter, that it would not "conduct any electronic search for" the actual contents of the "system.manager@conus.army.mil" email account because it did not believe the correspondence contained therein to be responsive to CoA Institute's June 26, 2015 FOIA request.  DeAgostino Decl. ¶ 13.

**Department of Defense Policy on the Withholding of Personally Identifying Information**

22.     By memorandum, dated November 9, 2001, DOD established new guidelines for the release of personally identifying information—including names and email addresses—because of the "increased risks to US military and civilian personnel" following the terrorist attacks of September 11, 2001.  *See* Decl. of Ryan P. Mulvey ¶ 4; Mulvey Decl. Ex. 1; *see also* Herrington Decl. ¶ 23 (referencing DOD policy following September 11, 2001).

23.     The November 9, 2001 DOD memorandum establishes three (3) categories of personally identifying information that can be withheld under Exemption 6.

    a.     *First*, "DoD components" should "ordinarily withhold lists of names and other personally identifying information of personnel currently or recently assigned within a particular component, unit, organization, or office with the Department of Defense[.]" Mulvey Decl. Ex. 1.  "If a particular [FOIA] request does not raise security or privacy concerns," however, the "names may be released[.]"  *Id.*

    b.     *Second*, with respect to requests for the "[v]erification of status of named individuals," DOD components are to consider whether release of the requested

information would "raise security or privacy concerns" or whether such information "has been routinely released to the public." *Id.*

      c.    *Third*, and relevant here, "[n]ames in documents that don't fall in any of the preceding categories," *e.g.*, "lists," "[o]rdinarily . . . should not be withheld," except "where the release of a particular name would raise substantial security or privacy concerns[.]" *Id.*

24.    The November 9, 2001 DOD memoranda also states that this policy "does not preclude a DoD component's discretionary release of names and duty information of personnel who, by the nature of their position and duties, frequently interact with the public[.]" *Id.*

25.    The November 9, 2001 DOD memorandum is directed to all components of DOD, including military departments such as the Army. *See id.* ("Memorandum for DoD FOIA Offices"). Defendant is obliged to abide by DOD's regulations and guidelines for implementation of the FOIA. *See, e.g.*, 32 C.F.R. § 286.2.

26.    Beyond the DOD departmental manual on the FOIA, the DOD FOIA Office has not published to its website any further guidance or statements of formal policy and practice for the application of Exemption 6. Mulvey Decl. ¶ 7.

### Defendant's Processing of White House Communications Agency Records

27.    Defendant referred CoA Institute's FOIA request to WHCA, in relevant part, but WHCA did not search for responsive records until approximately July 27, 2016, or roughly two months after the filing of the Complaint. *See* Herrington Decl. ¶ 7.

28.    Defendant, on behalf of WHCA and DOD, asserted Exemption 6 to withhold "DoD employees' names and other personally identifying information in all responsive documents, including those located by other Government agencies[.]" *Id.* ¶ 22.

29.     Defendant describes the individuals whose personally identifying information has been redacted in the responsive records as including "those members of DoD who do not routinely deal with the press and who [are] not senior-level employees[.]"  *Id.* ¶ 24.

30.     The personally identifying information of DOD contractors, as well as non-DOD employees, has not been withheld.  *Id.* ¶ 27.

31.     Defendant did not provide an individual-by-individual justification for the withholding of personally identifying information, *see supra* ¶ 23(c), but only offered categorical explanations.  *See* Herrington Decl. ¶¶ 24–26.

32.     Defendant's categorical explanations do not, in fact, address all individuals whose information has been withheld.  *See, e.g.*, *id.* ¶ 25 ("*Many* of these individuals serve in sensitive DoD positions[.]") (emphasis added).

33.     Defendant's declarant, Mark Herrington, did not refer to or cite the basis for his assertion concerning DOD's "practice" for applying FOIA Exemption 6.  *See id.* ¶ 6.

34.     Mr. Herrington's assertion that "DoD practice is to withhold names and personally identifying information of all military personnel at the rank of Colonel (O6) and below, and all civilians at the rate of GS-15 and below, with the possible exception of those DoD employees who routinely deal with the media," *id.* ¶ 23, contradicts the November 9, 2001 DOD memorandum that is published by the DOD FOIA Office on its website.  *See generally* Mulvey Decl. Ex. 1.

35.     EOP employees use an "eop.gov" email address for work-related purposes. Herrington Decl. ¶ 17; Def.'s Statement of Undisputed Material Facts ¶ 28, ECF No. 25-2.


//


//

7

Dated: July 9, 2018                                Respectfully submitted,

                                                   _/s/ Ryan P. Mulvey_
                                                   Ryan P. Mulvey
                                                   D.C. Bar No. 1024362
                                                   Lee A. Steven
                                                   D.C. Bar No. 468543

                                                   CAUSE OF ACTION INSTITUTE
                                                   1875 Eye Street, N.W., Suite 800
                                                   Washington, D.C. 20006
                                                   Telephone: (202) 499-4232
                                                   Facsimile: (202) 330-5842
                                                   ryan.mulvey@causeofaction.org
                                                   lee.steven@causeofaction.org

                                                   *Counsel for Plaintiff CoA Institute*