**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

—————————————————————— )
CAUSE OF ACTION INSTITUTE,        )
                                  )
            Plaintiff,              )
                                  )
        v.                      )           Civil Action No. 16-01020 (RDM)
                                  )
U.S. DEPARTMENT OF THE ARMY,      )
                                  )
            Defendant.           )
—————————————————————— )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff Cause of Action Institute hereby submits the following response to Defendant Department of the Army's Statement of Undisputed Material Facts.  ECF No. 25-2.  Defendant's numbered statements are reproduced below, and each statement is followed by Plaintiff's response.

1.       On June 26, 2015, Plaintiff Cause of Action Institute ("Plaintiff") submitted a Freedom of Information Act request to the Army via letter.  Compl. ¶ 14.

**Plaintiff's Response:** Undisputed.

2.       The request sought "all records of communications with any employee of [EOP] (e.g., "@omb.eop.gov," "@ostp.eop.gov," etc.), including but not limited to the Office of the White House Counsel ("@who.eop.gov"), concerning telephone and/or video conferences hosted and/or arranged by the military."  *Id.*

**Plaintiff's Response:** Plaintiff does not dispute Defendant's characterization of Plaintiff's June 26, 2015 Freedom of Information Act ("FOIA") request, but respectfully refers the Court to

the referenced document for a complete and accurate statement of its contents.  Compl. Ex. 2, ECF No. 1-2.

3.      The time period for the request was "January 1, 2015 to the present."  *Id.* ¶ 15.

**Plaintiff's Response:** Undisputed.

4.      Plaintiff clarified in its request that "[r]esponsive records would include any e-mail requesting that a conference line be opened, as well as any subsequent confirmation email or related correspondence."  *Id.* ¶ 16.

**Plaintiff's Response:** Undisputed.

5.      Plaintiff further stated that "the requested records may be maintained by the White House Military Office and/or the White House Communications Agency."  *Id.* ¶ 17.

**Plaintiff's Response:** Undisputed.

6.      The request sought a waiver of associated fees.  *Id.* ¶ 19.

**Plaintiff's Response:** Undisputed that Plaintiff sought a public interest fee waiver. Plaintiff also sought a fee reduction, insofar as it requested classification as a representative of the news media.  Compl. ¶ 19, ECF No. 1; Answer ¶ 19, ECF No. 13.

7.      In a letter dated August 19, 2015, the Army acknowledged receipt of the FOIA request, assigning it office control number FA-15-0231 and departmental control number FP-15-026921.  *Id.* ¶ 20.

**Plaintiff's Response:** Undisputed.

8.      By letter dated September 22, 2015, Defendant informed Plaintiff via letter that it had conducted a search of the "Chief of Legislative Liaison (OCLL), Defense Information System Agency (DISA), and Army's Enterprise Service desk (AESD) seeking any records responsive to

your FOIA request."  Compl. Ex. 4 at 1.  However, Defendant concluded that "no responsive documents exist under our purview."  *Id.*

**Plaintiff's Response**: Plaintiff does not dispute Defendant's characterization of the September 22, 2015 determination letter, but respectfully refers the Court to the referenced document for a complete and accurate statement of its contents.  Compl. Ex. 4, ECF No. 1-4.

9.     Plaintiff appealed the Army's final determination, arguing that an adequate search had not been conducted.  Compl. Ex. 5 at 1.

**Plaintiff's Response:** Undisputed that Plaintiff filed a timely administrative appeal. Plaintiff respectfully refers the Court to the referenced appeal for a complete and accurate statement of Plaintiff's arguments concerning search adequacy, including the issue of the "system.manager@conus.army.mil" email account.  Compl. Ex. 5, ECF No. 1-5.

10.     Defendant acknowledged receipt of the appeal on November 6, 2015.  Compl. Ex. 6 at 1.

**Plaintiff's Response:** Undisputed.

11.     Before the appeal was adjudicated, on May 31, 2016 Plaintiff brought suit under the FOIA, 5 U.S.C. § 552, seeking the expedited processing and release of the requested records. *Id.* at 8.

**Plaintiff's Response:** Undisputed.

12.     Paul DeAgostino is the Senior Counsel Senior Counsel [*sic*] to the Chief Attorney and Legal Services, Office of the Administrative Assistant to the Secretary of the Army ("OAA"). In this capacity, pursuant to Army Regulation, he is the delegated Initial Denial Authority for Freedom of Information Act requests for records maintained by the Secretary of the Army and its serviced activities.

**Plaintiff's Response:** Undisputed.

13.     The DeAgostino Declaration explains the searches and inquiries the Army conducted in responding to Plaintiff's FOIA request.

**Plaintiff's Response:** Undisputed that the DeAgostino Declaration describes Defendant's efforts to search for records responsive to Plaintiff's FOIA request.  But, as set forth in its cross-motion for summary judgment, Plaintiff disputes the sufficiency of the DeAgostino Declaration to establish the adequacy of Defendant's search and its interpretation of Plaintiff's FOIA request.

14.     Upon receipt of Plaintiff's FOIA request, Mr. DeAgostino reviewed the request and determined that the Army was not likely to have responsive records.  Army FOIA personnel contacted the following offices, which were identified by the FOIA program manager as the most likely entities to hold responsive records: Chief of Legislative Liaison (OCLL), Defense Information Systems Agency (DISA), and Army's Enterprise Service Desk (AESD).  Each of these offices stated that they did not maintain responsive records.  Mr. DeAgostino accordingly informed Plaintiff that no responsive records were located.  Declaration of Paul DeAgostino ("DeAgostino Decl.") ¶ 6.

**Plaintiff's Response:** Plaintiff does not dispute that Defendant processed Plaintiff's FOIA request as described in the DeAgostino Declaration.  To the extent Defendant implies that its actions are sufficiently supported by the declaration, then that is a conclusion of law to which no response is required.  Plaintiff does not dispute that Mr. DeAgostino "informed Plaintiff that no responsive records were located," insofar as Mr. DeAgostino signed Defendant's final response letter.  *See* Compl. Ex. 3, ECF No. 1-3.

15.     Following Plaintiff's administrative appeal and subsequent lawsuit, Mr. DeAgostino conducted additional inquiries to determine whether the Army held any records responsive to Plaintiff's Request.  *Id.* ¶¶ 8-10.

**Plaintiff's Response:**  Undisputed that Defendant "conducted additional inquires" following the filing of the instant lawsuit.  *See* Decl. of Paul DeAgostino ¶ 8, ECF No. 25-3.  To the extent this statement is meant to imply the adequacy of those "additional inquires," then it is a conclusion of law to which no response is required.

16.     In addition, because Plaintiff highlighted a specific email message in its Complaint, Mr. DeAgostino focused his inquiries as to whether the Army maintained any such emails, and whether they were responsive to the request.  *Id.* ¶ 8.

**Plaintiff's Response:**  Undisputed that Defendant focused its supplemental search efforts based on the example email from the "system.manager@conus.army.mil" account.  *See, e.g.*, Compl. Ex. 1, ECF No. 1-1.  Plaintiff notes that it provided this email to Defendant before the filing of the lawsuit as an exhibit to Plaintiff's September 25, 2015 administrative appeal.  Compl. ¶¶ 25–26; Compl. Ex. 5.  Plaintiff pointed to the email as proof that responsive records under Defendant's control exist, particularly given the reasonable inference that staff in the Executive Office of the President ("EOP") frequently participate in audio conferences.  *See* Compl. Ex. 5 at 3–4 ("In one e-mail . . . [an Office of Management and Budget official] received a confirmation notice from an Army-maintained e-mail account for an upcoming 'audio conference' set-up for the purpose of conducting a FOIA consultation with attorneys at [the Office of the White House Counsel] and others.  This record, and similar others, would be directly responsive to Cause of Action's FOIA request." (footnote omitted)).

17.     Mr. DeAgostino initially conferred with representatives from the "Continental United States, Theater Network Operations and Security Center (CONUS-TNOSC)," who have knowledge regarding the now-retired email extension "@us.army.mil" and "@conus.army.mil." He also conferred with former employees of the United States Army Information Technology Agency (USA-ITA), and with the Department of Defense, Defense Information Systems Agency, Joint Service Provider (DISA-JSP).  Mr. DeAgostino was informed by all of these organizations that the Army was not likely to maintain any responsive emails with these extensions and as a consequence, he was unable to locate any such emails.  *Id.* ¶ 9.

**Plaintiff's Responsive:** Plaintiff does not dispute that Mr. DeAgostino conferred with the referenced "representatives" and "employees," but this statement is immaterial.  Defendant later identified the email account referenced by Plaintiff in its appeal and Complaint ("system.manager@conus.army.mil") and determined that its contents were "housed on an Army server."  DeAgostino Decl. ¶ 11.

18.     Subsequently, Mr. DeAgostino conferred with representatives of the Army Materiel Command, Chief Information Officer and G-6 (AMC CIO/G-6).  He determined, based on his knowledge and experience, that this office was the most knowledgeable entity regarding the source and origin of the email which Plaintiff attached their complaint.  *Id.* ¶ 10.

**Plaintiff's Response:** Undisputed.

19.     Mr. DeAgostino determined that the email message described by Plaintiff, referencing a purported conference call, would not have involved Army or other DoD personnel in facilitating or arranging the cited conference call.  *Id.* ¶ 11.  Because the conference call cited was not "hosted and/or arranged by the military," Plaintiff's cited email would not constitute a record responsive to their request.  *Id.* ¶ 13.  In addition, Mr. DeAgostino concluded any other

6

similar emails concerning similar conference calls, would not have been "hosted and/or arranged by the military," and are accordingly non-responsive as well. *Id.* ¶ 12.

> **Plaintiff's Response:** Plaintiff does not dispute Defendant's description of its determination. To the extent this statement is meant to imply that Defendant conducted an adequate search or correctly determined the responsiveness of the records associated with "system.manager@conus.army.mil" account, then it is a conclusion of law to which no response is required.

20.    Mr. DeAgostino accordingly determined, in line with his original response, that the Army does not control any records responsive to Plaintiff's request. *Id.* ¶ 13.

> **Plaintiff's Response:** Plaintiff does not dispute Defendant's description of Mr. DeAgostino's determination. To the extent this statement is meant to imply that Defendant conducted an adequate search or correctly determined the responsiveness of the records at issue, then it is a conclusion of law to which no response is required.

21.    Mark Herrington is an Associate Deputy General Counsel in the Office of General Counsel ("OGC") (Office of Litigation Counsel) of the United States Department of Defense ("DoD"). OGC provides legal advice to the Secretary of Defense and other leaders within the DoD. He is responsible for, among other things, overseeing Freedom of Information Act ("FOIA") litigation involving DoD. His duties include coordinating searches across DoD to ensure thoroughness, reasonableness, and consistency. Declaration of Mark Herrington ("Herrington Decl.") ¶ 1.

> **Plaintiff's Response:** Undisputed.

22.    The Herrington Declaration explains the searches and production effort undertaken by DoD in response to Plaintiff's lawsuit.

**Plaintiff's Response:** Undisputed.

23.    DoD reviewed plaintiff's FOIA request and determined, based on the content of the request itself and the nature of the records sought, as well as through consultation with the DOD FOIA liaison, Jim Hogan, that the only reasonable and likely source for responsive records was the White House Communications Agency ("WHCA"), an operational unit of the White House Military Office ("WHMO").  *Id.* ¶ 5.

**Plaintiff's Response:** Undisputed.

24.    WHMO is a component of the Department of Defense that provides services in support of the President and the White House.  *Id.* ¶ 6.

**Plaintiff's Response:** Undisputed.  Plaintiff notes that the White House Military Office ("WHMO") also serves as a functional component of EOP.  *See* Compl. ¶¶ 1–3.

25.    WHCA's statutory mission is to provide telecommunications support and services to the President and his staff.  *Id.* ¶ 5.

**Plaintiff's Response:** Undisputed.

26.    WHCA personnel conducted a search of records in response to Plaintiff's FOIA request.  *Id.* ¶ 7.  Neither hardcopy records nor classified systems were searched because all requests to WHCA from EOP personnel are made solely through unclassified email.  *Id.* ¶ 18.

**Plaintiff's Response:** Undisputed.

27.    WHCA searched all electronic mailboxes within its organization, both for individual recipients and group recipients, for messages sent or received between January 1, 2015, the date requested by Plaintiff, and July 27, 2016, the date on which WHCA began its searches.  *Id.* ¶ 8.

**Plaintiff's Response:** Undisputed.

28.     All EOP employees use an email address with the domain "eop.gov" and all WHCA/WHMO employees use an email address with the domain "whmo.mil." *Id.* ¶ 17.  To capture any correspondence between EOP personnel and WHCA employees, for purposes of hosting or arranging a teleconference, WHCA searched for emails sent or received during the relevant period with email addresses from the domain "eop.gov" to email addresses with the domain "whmo.mil." *Id.* ¶ 8.  Emails were retrieved which contained the term "request," and one or more of the following terms "conference room," "conference line," "video teleconference," "video conference," or "tech bridge." *Id.*

**Plaintiff's Response:** Undisputed.

29.     This search retrieved 91,791 pages of documents.  WHCA personnel then manually reviewed each page of the retrieved documents for responsiveness and applicable exemptions.  *Id.* ¶ 9.

**Plaintiff's Response:**  Undisputed.

30.     WHCA personnel conducted a "line-by-line" review of every document, to determine whether they were responsive to Plaintiff's request, and if so, whether any exemptions applied.  That is, WHCA personnel evaluated whether a retrieved email constituted a request or confirmation of a conference call or teleconference for EOP personnel, hosted or arranged by the military.  *Id.* ¶ 10.

**Plaintiff's Response:** Undisputed.

31.     The vast majority of the retrieved documents were deemed nonresponsive.  For instance, many of the potentially responsive emails were not a request for any action by WHCA, such as hosting or arranging a teleconference or video conference.  Further, many of the pages of documents retrieved from this initial search were duplicative.  *Id.* ¶¶ 13-14.

9

**Plaintiff's Response:** Undisputed.

32. Over the course of eleven productions, WHCA, through its counsel at the Department of Justice, released 202 pages of responsive records to Plaintiff either in full or in part. *Id.* ¶ 12.

**Plaintiff's Response:** Undisputed.

33. To ensure that it search process captured the full universe of responsive emails, WHCA also conducted a supplemental search on March 29, 2018. That search also looked for emails dating between January 1, 2015 and July 27, 2016, for email addresses from the domain "eop.gov" to email addresses with the domain "whmo.mil." This supplemental search used the following search terms: "conference bridge," or "conference call," or "meet-me conference" or "VTC request." *Id.* ¶ 15.

**Plaintiff's Response:** Undisputed.

34. This supplemental search retrieved approximately 65,000 collections of records. WHCA performed the same line-by-line manual review process to determine the responsiveness of these records, and found that a great number of the retrieved collections of records were duplicates that had previously been retrieved, and deemed non-responsive in WHCA's initial search. This supplemental review yielded fourteen additional pages of responsive records that were produced to Plaintiff either in full or in part. *Id.* ¶ 16.

**Plaintiff's Response:** Undisputed.

35. The above search terms, in the initial and supplemental searches, were collectively determined by WHMO and WHCA, based on their knowledge and experience with these types of requests, personnel to be all such terms "reasonably likely to be used by personnel to request and respond to requests for conference calls and teleconferences." *Id.* ¶ 19.

**Plaintiff's Response:** Undisputed.

36.     Because WHCA is the DoD organization tasked to provide telecommunications support and services to the President and his staff, and because all such conference requests are made via email, these parameters were reasonably likely to capture all emails concerning conference calls and video conferences for EOP personnel "hosted or arranged by the military," as sought in Plaintiff's request.  *Id.* ¶ 20.

**Plaintiff's Response:** Undisputed with respect to the search of record locations within the White House Communications Agency.  Plaintiff disputes the adequacy of Defendant's search, and its concurrent interpretation of the scope of Plaintiff's FOIA request, with respect to the "system.manager@conus.army.mil" account, which contains responsive records.

37.     Defendant applied FOIA Exemptions 5, 6, 7(C), and 7(E) to the records produced to Plaintiff.

**Plaintiff's Response:** Undisputed.

38.     DoD withheld under Exemption 6 the names and personally identifiable information of those DoD employees at the military rank of Colonel and below, and all civilians at the rate of GS-15 and below.  The information withheld constituted material the disclosure of which would constitute an invasion of personal privacy that outweighs the public interest in disclosure.  *Id.* ¶¶ 23-24.

**Plaintiff's Response**:  Plaintiff lacks information sufficient to form a belief as to whether Defendant only redacted the names and personally identifying information of "DoD employees at the military rank of Colonel and below, and all civilians at the rate of GS-15 and below."  To the extent a response is required, Plaintiff disputes this factual claim.  Moreover, Defendant's claim is immaterial to the Court's determination of the proper application of Exemption 6.  *See* Pl.'s

11

Statement of Undisputed Material Facts ¶¶ 22–24; *see also* Decl. of Ryan P. Mulvey ¶ 4.  The remainder of Defendant's statement is a conclusion of law to which no response is required.

39.     All of the documents described in Mr. Herrington's declaration were reviewed line-by-line to identify information exempt from disclosure and every effort was made to segregate releasable material from exempt material.  *Id.* ¶ 28.

**Plaintiff's Response:** Plaintiff does not dispute that Defendant attempted to review line-by-line the records at issue and undertake reasonable efforts to segregate non-exempt information.  To the extent this statement is meant to imply that Defendant met its obligations under the FOIA, then it is a conclusion of law to which no response is required.

Dated: July 9, 2018                                     Respectfully submitted,

                                                        */s/ Ryan P. Mulvey*
                                                        Ryan P. Mulvey
                                                        D.C. Bar No. 1024362
                                                        Lee A. Steven
                                                        D.C. Bar No. 468543

                                                        CAUSE OF ACTION INSTITUTE
                                                        1875 Eye Street, N.W., Suite 800
                                                        Washington, D.C. 20006
                                                        Telephone: (202) 499-4232
                                                        Facsimile: (202) 330-5842
                                                        ryan.mulvey@causeofaction.org
                                                        lee.steven@causeofaction.org

                                                        *Counsel for Plaintiff CoA Institute*